TOWN OF STRATFORD *v.* CITY OF BRIDGEPORT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued May 3—decision released July 26, 1977

*J. Roger Shull,* for the appellant (plaintiff).

*Samuel C. Derman,* deputy city attorney, for the appellee (defendant).

HOUSE, C. J.    This appeal arises from the following circumstances:   The plaintiff town brought an action in the Superior Court in Fairfield County alleging, in brief, that the defendant owned and operated the Igor Sikorsky Memorial Airport situated within the plaintiff town, that the defendant had recently acquired additional real estate in the immediate vicinity of the airport for the purpose

of expanding it, and that the acquisitions were made in defiance of an injunction issued by the Superior Court in 1971 and were in violation of § 13b-43 of the General Statutes in that the defendant failed to obtain the approval of the plaintiff to make the acquisitions. By way of relief, the plaintiff sought temporary and permanent injunctions restraining the defendant from utilizing the newly acquired real estate, a declaratory judgment that any acquisition by the defendant for the purpose of expanding or improving the airport would require the plaintiff's approval, an order setting aside the conveyances, an adjudication that the defendant be held in contempt, and any other equitable relief to which it might be entitled.

The defendant pleaded in abatement that the Superior Court had "no jurisdiction over the above action since jurisdiction over the matters referred to in this complaint is lodged exclusively in the United States of America." The defendant asserted four reasons why the court had no jurisdiction. The first was that the defendant had purchased the additional land for clear and transition zones to protect the approach and departure of aircraft on the existing runways, in accordance with a grant agreement between it and the federal aviation administration (hereinafter referred to as FAA). The second was that under the provisions of the Federal Aviation Act of 1958 (49 U.S.C. §§ 1301—1542) the federal government possesses and exercises complete and exclusive national sovereignty of the air space of the United States, which includes air space needed to ensure safety in the takeoff and landing of aircraft. The third was that insofar as § 13b-43 purports to regulate or prohibit the defendant's acquisition of clear and transition zones it is

in conflict with the specific provisions of the Federal Aviation Act which reserves exclusive jurisdiction in this area to the United States and, accordingly, is illegal and void. The fourth is that if the injunction referred to in the plaintiff's complaint purports to regulate the acquisition and maintenance of clear and transition zones, then the injunction is illegal and void in that it seeks to regulate navigable air space in violation of the Federal Aviation Act of 1958.

The plaintiff pleaded a general denial to the allegations of the plea in abatement. After a hearing, the court sustained the plea and the present appeal was taken by the plaintiff from the judgment sustaining the plea.

The basic ratio decidendi of the court appears from its finding. It found that clear and transition zones are part of navigable air space because these zones are necessary to protect the approach and departure patterns of aircraft at airports, and that the federal government possesses complete and exclusive sovereignty over navigable air space, as provided by § 1108 (a) of the Federal Aviation Act of 1958. 49 U.S.C. § 1508 (a). It then concluded that the regulation of navigable air space is within the exclusive jurisdiction of the United States government by virtue of the Federal Aviation Act of 1958, that a determination of what constitutes an adequate interest in land for the establishment of clear and transition zones lies solely within the jurisdiction of the United States government acting through the FAA, and that the Superior Court is without jurisdiction to grant the plaintiff's prayer for relief because that prayer seeks to impose limitations and restraints upon access to navigable air

space. The court expressly sustained the defendant's claim of law that "[t]he Superior Court lacks jurisdiction to entertain plaintiff's claims for relief because said claims involve an issue of access to navigable air space, and jurisdiction over this subject matter lies exclusively with the U.S. Government."

The plaintiff's principal assignment of error goes directly to a fundamental issue of federalism, as it pertains to the relationship between state courts and federal courts and state courts and federal law. The constitution of the United States, article III, § 1, states in part: "The judicial Power of the United States, shall be vested in one supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish." In Federalist Paper No. 82, Alexander Hamilton commented on this provision: "This might either be construed to signify, that the supreme and subordinate courts of the union should alone have the power of deciding those causes, to which their authority is to extend; or simply to denote, that the organs of the national judiciary should be one supreme court, and as many subordinate courts, as congress should think proper to appoint; in other words, that the United States should exercise the judicial power with which they are to be invested, through one supreme tribunal, and a certain number of inferior ones, to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the state tribunals: and as the first would amount to an alienation of state power by implication, the last appears to me the most defensible construction. . . . When . . . we consider the state governments and the national governments, as they truly are, in the light of kindred systems, and as parts of one whole, the infer-

ence seems to be conclusive, that the state courts would have a concurrent jurisdiction in all cases arising under the laws of the union, where it was not expressly prohibited."

Hamilton's view of state court jurisdiction has prevailed and has been observed since the establishment of the nation's constitutional government. An eminent constitutional authority even before his appointment to the United States Supreme Court, Mr. Justice Felix Frankfurter wrote, concurring, in *Brown* v. *Gerdes,* 321 U.S. 178, 188, 64 S. Ct. 487, 88 L. Ed. 659: "Since 1789, rights derived from federal law could be enforced in state courts unless Congress confined their enforcement to the federal courts." Enforcement of rights is not necessarily consonant with application of law but the mandate of state courts to enforce rights emphasizes their judicial function in a federal system and their jurisdiction and responsibility to apply federal law unless such jurisdiction is expressly prohibited.

Over one hundred years ago, in *Claflin* v. *Houseman,* 93 U.S. 130, 136, 23 L. Ed. 833, Mr. Justice Joseph P. Bradley discussed the precise question, expressly approving the analysis propounded by Hamilton in the Federalist Papers. He wrote: "The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises,—sometimes with a leaning in one direction and sometimes in the other,—but the result of these discussions has, in our judgment, been . . . to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exer-

cise arising from the nature of the particular case. When we consider the structure and true relations of the Federal and State governments, there is really no just foundation for excluding the State courts from all such jurisdiction. The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under State laws, may be prosecuted in the State courts, and also, if the parties reside in different States, in the Federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the State courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it see fit, give to the Federal courts exclusive jurisdiction. See remarks of Mr. Justice Field, in *The Moses Taylor* . . . [71 U.S. (4 Wall.) 411, 429, 18 L. Ed. 397], and Story, J., in *Martin* v. *Hunter's Lessee* . . . [14 U.S. (1 Wheat.) 304, 334, 4 L. Ed. 97], and of Mr. Justice Swayne, in *Ex parte McNeil* . . . [80 U.S. (13 Wall.) 236,

20 L. Ed. 624]. This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent." To the same effect, see the unanimous decision of the United States Supreme Court in *Robb* v. *Connolly*, 111 U.S. 624, 636, 4 S. Ct. 544, 28 L. Ed. 542.

As recently as its decision in *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 483, the United States Supreme Court has reaffirmed the principles enunciated by Hamilton in the Federalist Papers and approved in *Claflin* v. *Houseman,* supra, and *Robb* v. *Connolly,* supra. Speaking through Mr. Justice Potter Stewart, the court stated (p. 507): "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception

rather than the rule. This Court's approach to the question of whether Congress has ousted state courts of jurisdiction was enunciated by Mr. Justice Bradley in *Claflin* v. *Houseman,* 93 U.S. 130 [23 L. Ed. 833], and has remained unmodified through the years."

In this case, it appears that counsel and the trial court overlooked these basic principles of federalism. The court has mistaken the supremacy and exclusive sovereignty of federal law with exclusive federal court jurisdiction. It has construed the existence of federal law in the present case to mean that not only is federal law wholly dispositive of the issues presented but that only a federal court can apply that law and, accordingly, being a state court, it did not have jurisdiction to reach the merits of the case.

Though federal law is supreme, we have neither been referred to nor find any exclusive grant to the federal courts of jurisdiction over the subject matter of the present action. Therefore, the trial court erroneously concluded that the Superior Court lacks jurisdiction. Although it is true that where the supremacy of federal law exists it requires that state courts apply that law, the mere fact of such supremacy does not oust a state court from jurisdiction. See Hart & Wechsler, The Federal Courts and the Federal System (2d Ed.), c. 4, § 2.

There is error, the judgment is set aside and the case is remanded with direction to overrule the plea in abatement and then to proceed according to law.

In this opinion the other judges concurred.